### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### HARTFORD DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| | ) | CASE NO. 16-20960 (JJT) |
| WALNUT HILL, INC., | ) | |
| | ) | |
| DEBTOR. | ) | |
| _____ | ) | |
| BONNIE C. MANGAN, Chapter 7 Trustee for | ) | |
| WALNUT HILL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. _____ |
| | ) | |
| RICHARD PLATSCHEK, SOLOMON | ) | |
| ABRAMCZYK, BENJAMIN LANDA, | ) | |
| WALNUT HILL MANAGEMENT COMPANY, | ) | |
| LLC, TYTY, LLC, and PEARL STAFFING, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Bonnie Mangan, Chapter 7 Trustee (the "Trustee") of Walnut Hill, Inc. ("Walnut Hill" or the "Debtor"), in support of this complaint ("Complaint"), hereby alleges:

## PRELIMINARY STATEMENT

The Trustee has commenced this adversary proceeding in order to avoid a series of fraudulent transfers and to recover damages related thereto. As further alleged herein, the defendants, under the guise of performing "management services," conspired to systematically siphon the Debtor's property for their own personal benefit and the benefit of their family, friends, and business associates. The defendants carried out their scheme at a time when the Debtor's principal was, upon information and belief, suffering from dementia and unable to supervise the defendants' conduct. At a time when the Debtor was already insolvent, the

defendants drained the Debtor of nearly all of its liquid assets and, simultaneously, allowed the Debtor's actual and just debts to go unpaid.

## JURISDICTION, VENUE AND NATURE OF THIS PROCEEDING

1.      On June 14, 2016, the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.  The Trustee was appointed Chapter 7 Trustee of the Debtor.

2.      This Complaint initiates an adversary proceeding pursuant to §§ 105, 502(d), 510, 544, 546, 548, 550, and 551 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and Fed. R. Bankr. P. 7001(1).  The Complaint seeks: (1) to avoid and recover intentional and constructive fraudulent transfers of the Debtor's property made to or for the benefit of the defendants; (3) to disallow any claims of the defendants against the Debtor and the estate; (4) to subordinate any allowed claims of the defendants against the Debtor and the estate to the claims of all other creditors of the estate; (5) an injunction against the defendants prohibiting them from further transferring or disposing of any of the property transferred; and (6) other legal and equitable relief.

3.      This Court has jurisdiction, under 28 U.S.C. §§ 157 and 1334(b), of the subject matter of this proceeding because the claims asserted herein arise under Chapter 7 of the Bankruptcy Code and are related to a case pending under the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut, Hartford Division (the "Bankruptcy Court").

4.      This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),(B),(E), (H) and (O).

5.      Pursuant to 28 U.S.C. § 1409(a), venue of this adversary proceeding in the Bankruptcy Court is proper because the Debtor's case is pending in this district and division.

## PARTIES

6.     The Trustee is the duly appointed Chapter 7 Trustee in this Chapter 7 case.

7.     Defendant, Richard Platschek ("Platschek"), is an individual with a residence in Lawrence, N.Y.

8.     Defendant, Solomon Abramczyk ("Abramczyk"), is an individual with a residence in Brooklyn, N.Y.

9.     Defendant, Benjamin Landa ("Landa") is an individual with a residence in Lawrence, N.Y.

10.    Defendant, Walnut Hill Management Company, LLC ("WHMC"), is a Connecticut limited liability company with a place of business in Brooklyn, N.Y.

11.    Defendant, Pearl Staffing, LLC ("Pearl Staffing"), is a New York limited liability company with a place of business at 6085 Strickland Avenue, Brooklyn, N.Y.

12.    Defendant, TYTY, LLC a/k/a TYTY Management, LLC ("TYTY"), is a New York limited liability company with a place of business at 6085 Strickland Avenue, Brooklyn, N.Y.

## FACTS COMMON TO ALL COUNTS

### I.    Background Information.

13.    The Debtor was a corporation that operated a skilled nursing/chronic and convalescent nursing home facility located at 55 Grand St., New Britain, Connecticut (the "Premises").

14.    Non-party, Walnut Hill Holdings, LLC ("WH Holdings"), was a Connecticut limited liability company with a place of business located at the Premises and was the owner of the Debtor.

15.     Non-party, Walnut Hill Real Estate, LLC ("WH Real Estate"), was a Connecticut limited liability company with a place of business at the Premises.

16.     For years, the Debtor was owned by WH Holdings and was operated by Dr. Donald Griggs ("Dr. Griggs").

17.     WH Real Estate owned the real property at which the Debtor's business was operated.

18.     Upon information and belief, by November 2012, at the latest, Dr. Griggs's mental capacities were diminished, and he was showing signs of dementia.

19.     Dr. Griggs was later adjudged to be incompetent and his daughter, Annemarie Griggs ("Ms. Griggs") was appointed his conservator on November 5, 2014.

**II.     The Debtor's Principal Required Assistance to Operate the Debtor's Business.**

20.     In or about the summer of 2012, a temporary administrator, Rosemarie Clark ("Clark"), was installed at the Debtor to supervise the Debtor's operations pursuant to a consent order issued on August 21, 2012 by the State of Connecticut.

21.     In or about that time, Dr. Griggs decided to seek a buyer for the Debtor.

22.     By October 2012, Dr. Griggs and Platschek initiated discussions pursuant to which Platschek, or an entity controlled by him, would acquire the Debtor or its assets.

23.     By late 2012, Dr. Griggs and Platschek agreed to enter into a short-term agreement whereby Platschek, through an entity created by him, would provide management services to the Debtor and obtain an option to purchase the assets of the Debtor.

24.     On November 7, 2012, Platschek formed WHMC and registered the entity with the Connecticut Secretary of State.

25.      Pursuant to the registration with the Connecticut Secretary of State, Platschek and Landa were listed as the two members of WHMC.

**III.     The Debtor Entered Into a Management Agreement and Option to Purchase.**

26.      By virtue of a *Management Agreement*, dated January 7, 2013 (the "Management Agreement"), signed by Dr. Griggs, individually, the Debtor, and WHMC, WHMC agreed to provide management services to the Debtor.

27.      Pursuant to the Management Agreement, WHMC was to perform all billing, collection and financial management activities concerning the Debtor, including processing and paying all accounts payable, paying all rents, insurance, applicable taxes, and operating costs as required by any lease entered into by the Debtor, establishing and maintaining bank accounts on behalf of the Debtor, and providing all necessary bookkeeping and accounting for the Debtor's operations.

28.      Further, pursuant to the Management Agreement, WHMC agreed to defend, indemnify and hold the Debtor harmless from and against any and all losses asserted against, imposed upon, or incurred by the Debtor, directly or indirectly, arising out of or resulting from any breach of any agreement or covenant of WHMC set forth in the Management Agreement.

29.      By virtue of an *Option to Purchase*, dated January 7, 2013 (the "Option to Purchase"), entered into between the Debtor, WH Holdings, WH Real Estate, and WHMC, acting by and through Platschek, WHMC secured the right and option to purchase the assets of the Debtor and WH Real Estate.

30.      Pursuant to the Option to Purchase, the transaction would include the following terms, *inter alia*: (a) WHMC would assume or pay, in full, the indebtedness of the Debtor and

WH Real Estate to TD Bank; (b) the chronic and convalescent home operated by the Debtor

would be transferred to WHMC; and (c) WHMC would pay $750,000.00 to WH Holdings.

**IV.    Platschek and Abramczyk Wrongfully Diverted the Debtor's Assets.**

31.    Abramczyk formed TYTY on January 15, 2013, approximately one week after

WHMC executed the Option to Purchase and the Management Agreement.

32.    Platschek considers himself to be Abramczyk's partner and, at all times relevant

herein, Platschek maintained a desk at TYTY's offices and/or shared office space with

Abramczyk.

33.    WHMC allegedly subcontracted with TYTY to process and pay the Debtor's

accounts payable, including the payment of rent, insurance, taxes, operating costs and expenses.

34.    Upon information and belief, there is no written agreement memorializing any

agreement between WHMC and TYTY concerning the Debtor.

35.    At all times relevant herein, WHMC provided TYTY with a signature stamp

bearing the name "Donald Griggs," authorized TYTY to issue checks from the Debtor's bank

account(s), and authorized TYTY to initiate ACH and wire transfers from the Debtor's bank

account(s), including transfers to WHMC, Platschek, Pearl Staffing, and itself, TYTY.

36.    WHMC, acting by and through Platschek, failed to affirmatively review and

approve transfers from the Debtor's bank accounts that were made by TYTY.

37.    At all times relevant herein, WHMC, acting by and through Platschek, also issued

checks from the Debtor's bank account(s), initiated transfers from the Debtor's bank accounts,

and authorized TYTY to initiate ACH and wire transfers from the Debtor's bank account(s),

including transfers to WHMC, TYTY, Pearl Staffing, and Platschek.

38.     WHMC and TYTY also transferred $903,392.21 of the Debtor's funds to the American Express Company, or an affiliated entity, to pay obligations that the Debtor did not owe on four credit card accounts for the benefit of family, friends, and business associates.

39.     Abramczyk formed Pearl Staffing on February 7, 2013, exactly one month after WHMC executed the Option to Purchase and the Management Agreement.

40.     When Pearl Staffing was formed, the Debtor already had numerous employees who worked in the Debtor's business.

41.     WHMC claims to have either (a) terminated the Debtor's employees and caused or allowed them to be hired as employees of Pearl Staffing, or (b) subcontracted with Pearl Staffing for the preparation and processing of payroll and records regarding taxes related thereto.

42.     Upon information and belief, there was no legitimate business reason for the Debtor to transfer its employment relationships to Pearl Staffing.

43.     Upon information and belief, no complete and executed contract memorializes any agreement between either the Debtor or WHMC and Pearl Staffing concerning the Debtor, and no invoices related to services Pearl Staffing allegedly provided to WHMC or the Debtor exist.

44.     Even if WHMC had subcontracted with either TYTY or Pearl Staffing, or both, there was no reason for the Debtor, who had already entered into the Management Agreement with WHMC, to pay either TYTY or Pearl Staffing for any services that either of them may have rendered as a party to a subcontract with WHMC.

45.     As a result of WHMC's failure to faithfully and adequately discharge its obligations under the Management Agreement, and its intentional, reckless, or negligent failure to supervise TYTY and Pearl Staffing in order to ensure that the Debtor's funds were used only

7

for proper purposes, the Debtor's actual and just debts were not being paid.  Instead, the Debtor's

funds were being transferred to, or for the benefit of, Platschek, WHMC, TYTY, Pearl Staffing,

Abramczyk, as well as to their family, friends and business associates, including Landa.

## V.    The Debtor Was Insolvent.

46.    The Debtor was insolvent during all times relevant herein, as evidenced by, *inter*

*alia*, the following:

  a.  A review of the tax returns filed on behalf of WH Holdings, which owns
     100% of the stock of the Debtor, revealed that the Debtor had a negative
     net worth as of December 31, 2012;

  b.  Clark, the temporary administrator appointed by the State of Connecticut
     in 2012, testified at her Rule 2004 examination that soon after she started
     working at the Debtor in the fall of 2012, she had to negotiate payments
     with various creditors to ensure that the facility continued to operate and
     provide services to its patients;

  c.  Tax returns prepared, but not filed, for WH Holdings indicate that the
     Debtor's net worth had decreased as of December 31, 2013;

  d.  On August 21, 2014, TD Bank filed a foreclosure action against the
     Debtor, Walnut Hill Real Estate LLC, WH Holdings, Dr. Griggs, and
     WHMC, Case No. HHB-CV-14-6026483, claiming that payments had not
     been made on two promissory notes totaling approximately $9,000,000;

  e.  Various collection actions were filed in 2013 and 2014 by persons and
     entities who had provided goods and/or services to the Debtor;

f.  A tax warrant was issued by the State of Connecticut in the amount of about $124,000.00 for failure to pay withholding taxes from June 30, 2014 to March 31, 2015;

g.  A tax statement from the City of New Britain for three years of delinquent personal property taxes owed by the Debtor indicated that the taxes had not been paid for the years 2011, 2012, and 2013;

h.  A water/sewer lien in the amount of approximately $27,000 was recorded on the City of New Britain land records for 55 Grand St., New Britain, CT on April 30, 2014; and

i.  Numerous checks issued by the Debtor had been returned for insufficient funds between March 2013 and December 2014.

47.    In fact, the Debtor had been in a distressed financial condition since as early as 2012 and continued to have financial difficulties until it filed for Chapter 7 bankruptcy protection.

48.    In short, the Debtor was insolvent and was no longer able to pay its debts as they came due at all times relevant herein, including on the dates of the fraudulent transfers alleged herein.

## VI.    The Debtor Terminated WHMC's Services.

49.    By way of a letter dated January 24, 2014, the Debtor terminated the Management Agreement with WHMC because of, *inter alia*, deteriorating conditions at the Debtor's facility and WHMC's continuing failure to provide any meaningful financial reporting to the Debtor.

50.    Because the Debtor was a skilled nursing facility with numerous residents, and other issues existed concerning the transfers of ownership and/or management of a skilled

nursing facility, WHMC continued to manage the Debtor's operations until approximately February 2015.

**VII.    Platschek Is Personally Liable.**

51.     Platschek personally committed, participated in, or directed the commission of the acts of WHMC that are alleged herein.

52.     At all times relevant herein, Platschek was an officer and member of WHMC.

53.     At all times relevant herein, Platschek maintained complete domination of the finances, policies, and business practices of WHMC in all respects, including the transactions that are the subject of this Complaint, so that WHMC had no separate mind, will, or existence of its own.

54.     Platschek maintained and used such control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest or unjust act in contravention of the Debtor's legal rights.

55.     Platschek's aforesaid control over WHMC and breach of duty to the Debtor proximately caused the injuries and unjust losses sustained by the Debtor, as alleged in this Complaint.

56.     At all times relevant herein, there was such a unity of interest and ownership between WHMC and Platschek that the independence of WHMC had in effect ceased or had never begun.

57.     An adherence to the fiction that WHMC was an entity with an identity separate and apart from Platschek would serve only to defeat justice and equity by permitting Platschek to escape liability arising out of the operation of WHMC for the benefit of Platschek, his friends, family, and business associates.

**VIII.    Abramczyk Is Personally Liable.**

58.    Abramczyk personally committed, participated in, or directed the commission of the acts of TYTY and Pearl Staffing that are alleged herein.

59.    At all times relevant herein, Abramczyk was an officer and member of TYTY and Pearl Staffing.

60.    At all times relevant herein, Abramczyk maintained complete domination of the finances, policy, and business practices of both TYTY and Pearl Staffing in all respects, including the transactions that are the subject of this Complaint, such that TYTY and Pearl Staffing had no separate mind, will, or existence of their own.

61.    Abramczyk maintained and used such control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest or unjust act in contravention of the Debtor's legal rights.

62.    Abramczyk's aforesaid control over TYTY and Pearl Staffing and their breaches of duty to the Debtor proximately caused the injuries and unjust losses sustained by the Debtor, as alleged in this Complaint.

63.    At all times relevant herein, there was such a unity of interest and ownership between Abramczyk, TYTY and Pearl Staffing that the independence of TYTY and Pearl Staffing had in effect ceased or had never begun.

64.    An adherence to the fiction that TYTY and Pearl Staffing were entities with an identity separate and apart from Abramczyk would serve only to defeat justice and equity by permitting Abramczyk to escape liability arising out of the operations of TYTY and Pearl Staffing for the benefit of Abramczyk.

## COUNT ONE
## <u>BREACH OF CONTRACT</u>
### (WHMC and PLATSCHEK)

65.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

66.     After the Management Agreement was executed, WHMC failed to fulfill its obligations to the Debtor thereunder by, *inter alia*: (a) failing to keep and maintain records of the Debtor's billing, collection and financial management activities; (b) directing and/or allowing TYTY to transfer funds of the Debtor to pay debts that were not owed by the Debtor; (c) failing and refusing to provide the Debtor with necessary bookkeeping and an accounting of the Debtor's operations, despite repeated requests from the Debtor that WHMC provide such financial information to the Debtor; (d) causing or allowing the Debtor – or TYTY – to issue numerous checks from the Debtor's checking account for which the Debtor did not have sufficient funds to pay; (e) failing to review and approve each transfer of funds from the Debtor's bank account(s) initiated by TYTY; (f) allowing the Debtor to be sued by creditors and needlessly incur attorney's fees; (g) allowing TYTY to pay itself, or otherwise transfer the Debtor's funds to TYTY, even though the Debtor had no obligation to pay TYTY for any services rendered by TYTY to WHMC; (h) failing to properly supervise TYTY and Pearl Staffing, resulting in the failure to pay all monies necessary to discharge the Debtor's obligations to employees and Connecticut taxing authorities.

67.     WHMC's failure to fulfill its contractual obligations to the Debtor was in breach of WHMC's obligations to the Debtor pursuant to the Management Agreement.

68.     As a result of WHMC's aforementioned breaches of the Management Agreement, the Debtor has incurred damages.

69.     Both WHMC and Platschek are liable to the Debtor for WHMC's breach of the Management Agreement.

**COUNT TWO**
**INTENTIONAL FRAUDULENT TRANSFER**
**11 U.S.C. §§ 548(a)(1)(A), 550 AND 551**
**(WHMC)**

70.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

71.    The Debtor made the following transfers to WHMC within two (2) years of the

Petition Date:

|     | Transfer Date | Amount of Transfer from Debtor |
| --- | --- | --- |
| 1 | 06/20/14 | $ 15,000.00 |
| 2 | 06/23/14 | $ 100,000.00 |
| 3 | 06/23/14 | $ 646.30 |
| 4 | 06/23/14 | $ 37.97 |
| 5 | 06/25/14 | $ 2,000.00 |
| 6 | 07/01/14 | $ 3,500.00 |
| 7 | 07/03/14 | $ 3,000.00 |
| 8 | 07/17/14 | $ 3,000.00 |
| 9 | 07/17/14 | $ 3,000.00 |
| 10 | 08/11/14 | $ 5,000.00 |
| 11 | 08/13/14 | $ 5,700.00 |
| 12 | 08/14/14 | $ 15,000.00 |
| 13 | 09/02/14 | $ 5,000.00 |
| 14 | 09/09/14 | $ 2,500.00 |
| 15 | 09/15/14 | $ 10,000.00 |
| 16 | 09/17/14 | $ 5,000.00 |
| 17 | 09/23/14 | $ 5,000.00 |
| 18 | 10/02/14 | $ 3,000.00 |
| 19 | 10/20/14 | $ 70,000.00 |
| 20 | 10/20/14 | $ 3,000.00 |
| 21 | 10/27/14 | $ 5,000.00 |
| 22 | 10/29/14 | $ 45,000.00 |
| 23 | 11/13/14 | $ 18,000.00 |
| 24 | 11/13/14 | $ 2,000.00 |
| 25 | 11/24/14 | $ 3,000.00 |
| 26 | 11/25/14 | $ 3,000.00 |
| 27 | 12/10/14 | $ 46,622.44 |
| 28 | 12/10/14 | $ 4,000.00 |
| 29 | 12/26/14 | $ 5,000.00 |

| 30 | 12/29/14 | $ | 2,500.00 |
|---|---|---|---|
| 31 | 01/05/15 | $ | 4,000.00 |
| 32 | 01/07/15 | $ | 30,000.00 |
| 33 | 01/08/15 | $ | 30,000.00 |
| 34 | 01/14/15 | $ | 135,000.00 |
| 35 | 01/15/15 | $ | 55,000.00 |
| | **TOTAL:** | **$** | **647,506.71** |

(collectively, the "WHMC Two-Year Transfers").

72.    The WHMC Two-Year Transfers were made to or for the benefit of WHMC and Platschek.

73.    WHMC, Platschek, TYTY and/or Abramczyk caused the Debtor to make the WHMC Two-Year Transfers.

74.    The WHMC Two-Year Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

75.    The WHMC Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and are recoverable from WHMC and/or Platschek pursuant to § 550(a) of the Bankruptcy Code.

76.    As a result of the foregoing, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the WHMC Two-Year Transfers; (b) directing that the WHMC Two-Year Transfers be set aside; (c) recovering the WHMC Two-Year Transfers, or the value thereof, from WHMC and/or Platschek for the benefit of the Debtor's Estate; and (d) an injunction against WHMC and Platschek prohibiting them from further disposing of the property transferred.

**COUNT THREE**
**INTENTIONAL FRAUDULENT TRANSFER**
**11 U.S.C. §§ 548(a)(1)(A), 550 AND 551**
**(TYTY and ABRAMCZYK)**

77.      The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

78.      The Debtor made the following transfers to TYTY within two (2) years of the

Petition Date:

|    | Transfer Date | Amount of Transfer from Debtor |
|----|---------------|-------------------------------|
| 1  | 06/27/14      | $ 2,500.00                    |
| 2  | 07/09/14      | $ 2,500.00                    |
| 3  | 07/18/14      | $ 14,400.00                   |
| 4  | 08/01/14      | $ 2,440.00                    |
| 5  | 08/13/14      | $ 2,000.00                    |
| 6  | 08/15/14      | $ 12,880.00                   |
| 7  | 09/12/14      | $ 14,880.00                   |
| 8  | 11/28/14      | $ 3,000.00                    |
| 9  | 12/11/14      | $ 4,200.00                    |
| 10 | 12/11/14      | $ 7,440.00                    |
| 11 | 12/11/14      | $ 7,200.00                    |
| 12 | 12/30/14      | $ 7,200.00                    |
| 13 | 12/30/14      | $ 7,440.00                    |
| 14 | 01/15/15      | $ 7,200.00                    |
| 15 | 01/15/15      | $ 7,440.00                    |
| 16 | 01/15/15      | $ 7,440.00                    |
|    | **TOTAL:**    | **$ 110,160.00**              |

(collectively, the "TYTY Two-Year Transfers").

79.      The TYTY Two-Year Transfers were made to or for the benefit of TYTY and

Abramczyk.

80.      WHMC, Platschek, TYTY and/or Abramczyk caused the Debtor to make the

TYTY Two-Year Transfers.

81.     The TYTY Two-Year Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

82.     The TYTY Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and are recoverable from TYTY and/or Abramczyk pursuant to § 550(a) of the Bankruptcy Code.

83.     As a result of the foregoing, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the TYTY Two-Year Transfers; (b) directing that the TYTY Two-Year Transfers be set aside; (c) recovering the TYTY Two-Year Transfers, or the value thereof, from TYTY and/or Abramczyk for the benefit of the Debtor's Estate; and (d) an injunction against TYTY and Abramczyk prohibiting them from further disposing of the property transferred.

**COUNT FOUR**
**INTENTIONAL FRAUDULENT TRANSFER**
**11 U.S.C. §§ 548(a)(1)(A), 550 AND 551**
**(PEARL STAFFING and ABRAMCZYK)**

84.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

85.     The Debtor made the following transfers to Pearl Staffing within two (2) years of the Petition Date:

|   | Transfer Date | Amount of Transfer from Debtor |
|---|---|---|
| 1 | 06/16/14 | $      50,000.00 |
| 2 | 06/20/14 | $      30,000.00 |
| 3 | 06/26/14 | $      40,000.00 |
| 4 | 07/02/14 | $      20,000.00 |
| 5 | 07/03/14 | $      30,000.00 |
| 6 | 07/07/14 | $      15,000.00 |
| 7 | 07/08/14 | $      60,000.00 |
| 8 | 07/10/14 | $      50,000.00 |
| 9 | 07/17/14 | $     120,000.00 |

| 10 | 07/18/14 | $ | 50,000.00 |
| 11 | 07/22/14 | $ | 20,000.00 |
| 12 | 07/24/14 | $ | 80,000.00 |
| 13 | 07/30/14 | $ | 50,000.00 |
| 14 | 08/01/14 | $ | 60,000.00 |
| 15 | 08/05/14 | $ | 70,000.00 |
| 16 | 08/13/14 | $ | 150,000.00 |
| 17 | 08/15/14 | $ | 20,000.00 |
| 18 | 08/21/14 | $ | 70,000.00 |
| 19 | 08/25/14 | $ | 40,000.00 |
| 20 | 08/28/14 | $ | 35,000.00 |
| 21 | 09/02/14 | $ | 30,000.00 |
| 22 | 09/04/14 | $ | 50,000.00 |
| 23 | 09/11/14 | $ | 150,000.00 |
| 24 | 09/12/14 | $ | 30,000.00 |
| 25 | 09/16/14 | $ | 35,000.00 |
| 26 | 09/18/14 | $ | 20,000.00 |
| 27 | 09/19/14 | $ | 30,000.00 |
| 28 | 09/22/14 | $ | 10,000.00 |
| 29 | 09/24/14 | $ | 40,000.00 |
| 30 | 09/29/14 | $ | 40,000.00 |
| 31 | 10/03/14 | $ | 40,000.00 |
| 32 | 10/14/14 | $ | 10,000.00 |
| 33 | 10/20/14 | $ | 60,000.00 |
| 34 | 10/20/14 | $ | 60,000.00 |
| 35 | 10/20/14 | $ | 65,000.00 |
| 36 | 10/28/14 | $ | 15,000.00 |
| 37 | 10/28/14 | $ | 7,000.00 |
| 38 | 11/06/14 | $ | 6,000.00 |
| 39 | 11/13/14 | $ | 150,000.00 |
| 40 | 11/14/14 | $ | 30,000.00 |
| 41 | 11/17/14 | $ | 20,000.00 |
| 42 | 11/18/14 | $ | 68,000.00 |
| 43 | 11/19/14 | $ | 20,000.00 |
| 44 | 11/25/14 | $ | 50,000.00 |
| 45 | 11/25/14 | $ | 10,000.00 |
| 46 | 11/26/14 | $ | 5,500.00 |
| 47 | 11/26/14 | $ | 55,000.00 |
| 48 | 12/03/14 | $ | 40,000.00 |

| 49 | 12/05/14 | $ | 13,000.00 |
| 50 | 12/09/14 | $ | 50,000.00 |
| 51 | 12/10/14 | $ | 150,000.00 |
| 52 | 12/11/14 | $ | 60,000.00 |
| 53 | 12/11/14 | $ | 50,000.00 |
| 54 | 12/16/14 | $ | 35,000.00 |
| 55 | 12/24/14 | $ | 35,000.00 |
| 56 | 12/26/14 | $ | 35,000.00 |
| 57 | 12/30/14 | $ | 30,000.00 |
| | **TOTAL:** | **$** | **2,664,500.00** |

(collectively, the "Pearl Staffing Two-Year Transfers").

86.     The Pearl Staffing Two-Year Transfers were made to or for the benefit of Pearl Staffing and Abramczyk.

87.     WHMC, Platschek, TYTY and/or Abramczyk caused the Debtor to make the Pearl Staffing Two-Year Transfers.

88.     The Pearl Staffing Two-Year Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

89.     The Pearl Staffing Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and are recoverable from TYTY and/or Abramczyk pursuant to § 550(a) of the Bankruptcy Code.

90.     As a result of the foregoing, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Pearl Staffing Two-Year Transfers; (b) directing that the Pearl Staffing Two-Year Transfers be set aside; (c) recovering the Pearl Staffing Two-Year Transfers, or the value thereof, from Pearl Staffing and/or Abramczyk for the benefit of the Debtor's Estate; and (d) an injunction against Pearl Staffing and Abramczyk prohibiting them from further disposing of the property transferred.

18

## COUNT FIVE
## CONSTRUCTIVE FRAUDULENT TRANSFER
## U.S.C. §§ 548(a)(1)(B), 550 AND 551
## (WHMC and PLATSCHEK)

91.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

92.     The WHMC Two-Year Transfers were made within two (2) years before the

Petition Date

93.     The Debtor received less than a reasonably equivalent value in exchange for the

WHMC Two-Year Transfers.

94.     At the time of the WHMC Two-Year Transfers, the Debtor was insolvent, or

became insolvent, as a result of the WHMC Two-Year Transfers.

95.     At the time of the WHMC Two-Year Transfers, the Debtor was engaged in a

business or a transaction, or was about to engage in a business or a transaction, for which any

property remaining with the Debtor was an unreasonably small capital.

96.     At the time of the WHMC Two-Year Transfers, the Debtor intended to incur, or

believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

97.     The WHMC Two-Year Transfers constitute constructively fraudulent transfers

avoidable by the Trustee pursuant to §§ 548(a)(1)(B) and 551 of the Bankruptcy Code and are

recoverable from WHMC and/or Platschek pursuant to § 550(a) of the Bankruptcy Code.

98.     As a result of the foregoing, pursuant to §§ 548(a)(1)(B), 550(a), and 551 of the

Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two-

Year Transfers; (b) directing that the WHMC Two-Year Transfers be set aside; and (c)

recovering the WHMC Two-Year Transfers, or the value of the WHMC Two-Year Transfers

from WHMC and/or Platschek for the benefit of the Debtor's Estate; and (d) an injunction

against WHMC and Platschek prohibiting them from further disposing of the property

transferred.

**COUNT SIX**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**U.S.C. §§ 548(a)(1)(B), 550 AND 551**
**(TYTY and ABRAMCZYK)**

99.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

100.    The TYTY Two-Year Transfers were made on or within two (2) years before the

Petition Date

101.    The Debtor received less than a reasonably equivalent value in exchange for the

TYTY Two-Year Transfers.

102.    At the time of the TYTY Two-Year Transfers, the Debtor was insolvent, or

became insolvent, as a result of the TYTY Two-Year Transfers.

103.    At the time of the TYTY Two-Year Transfers, the Debtor was engaged in a

business or a transaction, or was about to engage in a business or a transaction, for which any

property remaining with the Debtor was an unreasonably small capital.

104.    At the time of the TYTY Two-Year Transfers, the Debtor intended to incur, or

believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

105.    The TYTY Two-Year Transfers constitute constructively fraudulent transfers

avoidable by the Trustee pursuant to §§ 548(a)(1)(B) and 551 of the Bankruptcy Code and are

recoverable from TYTY and Abramczyk pursuant to § 550(a) of the Bankruptcy Code.

106.    As a result of the foregoing, pursuant to §§ 548(a)(1)(B), 550(a), and 551 of the

Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the TYTY

Two-Year Transfers; (b) directing that the TYTY Two-Year Transfers be set aside; (c)

recovering the TYTY Two-Year Transfers, or the value of the TYTY Two-Year Transfers

fromTYTY and/or Abramczyk for the benefit of the Debtor's Estate; and (d) an injunction

against TYTY and Abramczyk prohibiting them from further disposing of the property

transferred.

**COUNT SEVEN**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**U.S.C. §§ 548(a)(1)(B), 550 AND 551**
**(PEARL STAFFING and ABRAMCZYK)**

107.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

108.    The Pearl Staffing Two-Year Transfers were made on or within two (2) years

before the Petition Date.

109.    The Debtor received less than a reasonably equivalent value in exchange for the

Pearl Staffing Two-Year Transfers.

110.    At the time of the Pearl Staffing Two-Year Transfers, the Debtor was insolvent,

or became insolvent, as a result of the Pearl Staffing Two-Year Transfers.

111.    At the time of the Pearl Staffing Two-Year Transfers, the Debtor was engaged in

a business or a transaction, or was about to engage in a business or a transaction, for which any

property remaining with the Debtor was an unreasonably small capital.

112.    At the time of the Pearl Staffing Two-Year Transfers, the Debtor intended to

incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts

matured.

113.    The Pearl Staffing Two-Year Transfers constitute constructively fraudulent

transfers avoidable by the Trustee pursuant to § 548(a)(1)(B) and 551 of the Bankruptcy Code

and are recoverable from Pearl Staffing and Abramczyk pursuant to § 550(a) of the Bankruptcy

Code.

114.    As a result of the foregoing, pursuant to §§ 548(a)(1)(B), 550(a), and 551 of the

Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Pearl

Staffing Two-Year Transfers; (b) directing that the Pearl Staffing Two-Year Transfers be set

aside; (c) recovering the Pearl Staffing Two-Year Transfers, or the value thereof, from Pearl

Staffing and Abramczyk for the benefit of the Debtor's Estate; and (d) an injunction against

Pearl Staffing and Abramczyk prohibiting them from further disposing of the property

transferred.

**COUNT EIGHT**
**CUFTA INTENTIONAL FRAUDULENT TRANSFER 11 U.S.C. §§ 544(b)(1), 550(a)**
**AND 551 AND CONN. GEN. STAT. §§ 52-552e(a)(1) AND 52-552h(a)**
**(WHMC and PLATSCHEK)**

115.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

116.    The Debtor made the following transfers to WHMC within four (4) years of the

Petition Date:

|    | Transfer Date | Amount of Transfer from Debtor |
|----|---------------|--------------------------------|
| 1  | 02/08/13      | $        272,600.00            |
| 2  | 02/20/13      | $        200,000.00            |
| 3  | 02/25/13      | $         33,000.00            |
| 4  | 03/05/13      | $        160,000.00            |
| 5  | 03/14/13      | $        309,979.34            |
| 6  | 03/20/13      | $         34,955.48            |
| 7  | 04/10/13      | $        433,713.57            |
| 8  | 04/24/13      | $        143,338.88            |
| 9  | 04/25/13      | $         58,798.63            |
| 10 | 04/26/13      | $         22,561.82            |
| 11 | 05/02/13      | $         32,985.99            |
| 12 | 05/06/13      | $         33,856.02            |
| 13 | 05/15/13      | $         24,271.00            |
| 14 | 06/13/13      | $         37,500.00            |
| 15 | 07/09/13      | $         35,995.68            |
| 16 | 08/16/13      | $         35,190.00            |

| 17 | 08/19/13 | $ | 150,000.00 |
|----|----------|---|------------|
| 18 | 10/02/13 | $ | 3,100.00 |
| 19 | 10/04/13 | $ | 15,000.00 |
| 20 | 10/23/13 | $ | 23,826.44 |
| 21 | 11/14/13 | $ | 15,000.00 |
| 22 | 11/19/13 | $ | 21,241.64 |
| 23 | 12/02/13 | $ | 50,000.00 |
| 24 | 12/09/13 | $ | 15,000.00 |
| 25 | 12/27/13 | $ | 60,500.00 |
| 26 | 12/31/13 | $ | 5,368.41 |
| 27 | 01/14/14 | $ | 60,000.00 |
| 28 | 01/14/14 | $ | 6,000.00 |
| 29 | 01/15/14 | $ | 10,000.00 |
| 30 | 01/17/14 | $ | 5,000.00 |
| 31 | 01/20/14 | $ | 125,000.00 |
| 32 | 02/05/14 | $ | 2,500.00 |
| 33 | 02/11/14 | $ | 2,859.89 |
| 34 | 02/14/14 | $ | 25,634.64 |
| 35 | 03/06/14 | $ | 1,000.00 |
| 36 | 03/10/14 | $ | 500.00 |
| 37 | 03/11/14 | $ | 500.00 |
| 38 | 03/13/14 | $ | 2,500.00 |
| 39 | 03/18/14 | $ | 1,000.00 |
| 40 | 04/10/14 | $ | 3,000.00 |
| 41 | 04/17/14 | $ | 3,000.00 |
| 42 | 04/23/14 | $ | 2,500.00 |
| 43 | 04/25/14 | $ | 48,000.00 |
| 44 | 05/05/14 | $ | 2,500.00 |
| 45 | 05/15/14 | $ | 5,000.00 |
| 46 | 05/16/14 | $ | 5,000.00 |
| 47 | 05/27/14 | $ | 3,000.00 |
| 48 | 06/02/14 | $ | 6,767.92 |
| 49 | 06/20/14 | $ | 15,000.00 |
| 50 | 06/23/14 | $ | 100,000.00 |
| 51 | 06/23/14 | $ | 646.30 |
| 52 | 06/23/14 | $ | 37.97 |
| 53 | 06/25/14 | $ | 2,000.00 |
| 54 | 07/01/14 | $ | 3,500.00 |
| 55 | 07/03/14 | $ | 3,000.00 |

| 56 | 07/17/14 | $ | 3,000.00 |
|---|---|---|---|
| 57 | 07/17/14 | $ | 3,000.00 |
| 58 | 08/11/14 | $ | 5,000.00 |
| 59 | 08/13/14 | $ | 5,700.00 |
| 60 | 08/14/14 | $ | 15,000.00 |
| 61 | 09/02/14 | $ | 5,000.00 |
| 62 | 09/09/14 | $ | 2,500.00 |
| 63 | 09/15/14 | $ | 10,000.00 |
| 64 | 09/17/14 | $ | 5,000.00 |
| 65 | 09/23/14 | $ | 5,000.00 |
| 66 | 10/02/14 | $ | 3,000.00 |
| 67 | 10/20/14 | $ | 70,000.00 |
| 68 | 10/20/14 | $ | 3,000.00 |
| 69 | 10/27/14 | $ | 5,000.00 |
| 70 | 10/29/14 | $ | 45,000.00 |
| 71 | 11/13/14 | $ | 18,000.00 |
| 72 | 11/13/14 | $ | 2,000.00 |
| 73 | 11/24/14 | $ | 3,000.00 |
| 74 | 11/25/14 | $ | 3,000.00 |
| 75 | 12/10/14 | $ | 46,622.44 |
| 76 | 12/10/14 | $ | 4,000.00 |
| 77 | 12/26/14 | $ | 5,000.00 |
| 78 | 12/29/14 | $ | 2,500.00 |
| 79 | 01/05/15 | $ | 4,000.00 |
| 80 | 01/07/15 | $ | 30,000.00 |
| 81 | 01/08/15 | $ | 30,000.00 |
| 82 | 01/14/15 | $ | 135,000.00 |
| 83 | 01/15/15 | $ | 55,000.00 |
| | **TOTAL:** | **$** | **3,196,552.06** |

(collectively, the "WHMC Four-Year Transfers").

117.    WHMC, Platschek, TYTY and/or Abramczyk caused the Debtor to make the

WHMC Four-Year Transfers.

118.    The WHMC Four-Year Transfers were made to or for the benefit of WHMC and

Platschek.

24

119.     The WHMC Four-Year Transfers were made with the actual intent to hinder, delay or defraud the Debtor's then existing and future creditors.

120.     The WHMC Four-Year Transfers constituted fraudulent transfers within the meaning of, and in violation of, the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), Conn. Gen. Stat. § 52-552e(a)(1).

121.     As a direct and proximate result of the WHMC Four-Year Transfers, the Debtor, its Estate and its creditors have been caused to suffer money damages.

122.     At all times relevant to the WHMC Four-Year Transfers, there have been creditors who have held and still hold matured or unmatured unsecured claims against the Debtor that were and are allowable under § 502 of the Bankruptcy Code or that were and are not allowable only under § 502(e).

123.     As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the WHMC Four-Year Transfers; (b) directing that the WHMC Four-Year Transfers be set aside; (c) recoving the WHMC Four-Year Transfers, or the value thereof, pursuant to 11 U.S.C. §§ 550 and 551 and Conn. Gen. Stat. § 52-552h(a) from WHMC and/or Platschek; and (d) an injunction against WHMC and Platschek prohibiting them from further disposing of the transferred property or other property of the Estate.

### COUNT NINE
### CUFTA CONSTRUCTIVE FRAUDULENT TRANSFER
### CONN. GEN. STAT. §§ 52-552e(a)(2) AND 52-552f(a)
### (WHMC and PLATSCHEK)

124.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

125.     The WHMC Four-Year Transfers were made on or within four (4) years of the Petition Date.

126.    The Debtor did not receive a reasonably equivalent value in exchange for the WHMC Four-Year Transfers.

127.    At the time of the WHMC Four-Year Transfers, the Debtor was insolvent, or became insolvent, as a result of the WHMC Four-Year Transfers.

128.    At the time of the WHMC Four-Year Transfers, the Debtor was engaged, or was about to engage, in a business or transaction for which any property remaining with the Debtor was unreasonably small capital.

129.    At the time of the WHMC Four-Year Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts mature.

130.    The WHMC Four-Year Transfers constitute fraudulent transfers within the meaning of, and in violation of, CUFTA, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-552f(a).

131.    As a direct and proximate result of the WHMC Four-Year Transfers, the Debtor, its Estate and its creditors have been caused to suffer money damages.

132.    As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding the WHMC Four-Year Transfers; (b) directing the WHMC Four-Year Transfers be set aside; (c) recovering the WHMC Four-Year Transfers, or the value thereof, from WHMC and/or Platschek for the benefit of the Debtor's Estate, pursuant to 11 U.S.C. §§ 550 and 551 and state law; and (d) an injunction against WHMC and/or Platschek prohibiting them from further transferring the property transferred or other property of the Estate.

**COUNT TEN**
**CUFTA INTENTIONAL FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b)(1), 550(a)**
**AND 551 AND CONN. GEN. STAT. §§ 52-552e(a)(1) AND 52-552h(a)**
**(WHMC, Platschek, TYTY and ABRAMCZYK)**

133.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

134.    The Debtor made the following transfers to TYTY within four (4) years of the

Petition Date:

|  | **Transfer Date** | **Amount of Transfer from Debtor** |
|---|---|---|
| 1 | 04/26/13 | $ 5,000.00 |
| 2 | 07/12/13 | $ 14,400.00 |
| 3 | 08/15/13 | $ 14,880.00 |
| 4 | 09/13/13 | $ 14,400.00 |
| 5 | 10/11/13 | $ 14,880.00 |
| 6 | 11/15/13 | $ 14,880.00 |
| 7 | 01/17/14 | $ 29,280.00 |
| 8 | 02/18/14 | $ 29,760.00 |
| 9 | 03/14/14 | $ 13,440.00 |
| 10 | 04/28/14 | $ 7,440.00 |
| 11 | 05/16/14 | $ 10,000.00 |
| 12 | 06/09/14 | $ 7,000.00 |
| 13 | 06/13/14 | $ 12,280.00 |
| 14 | 06/27/14 | $ 2,500.00 |
| 15 | 07/09/14 | $ 2,500.00 |
| 16 | 07/18/14 | $ 14,400.00 |
| 17 | 08/01/14 | $ 2,440.00 |
| 18 | 08/13/14 | $ 2,000.00 |
| 19 | 08/15/14 | $ 12,880.00 |
| 20 | 09/12/14 | $ 14,880.00 |
| 21 | 11/28/14 | $ 3,000.00 |
| 22 | 12/11/14 | $ 4,200.00 |
| 23 | 12/11/14 | $ 7,440.00 |
| 24 | 12/11/14 | $ 7,200.00 |
| 25 | 12/30/14 | $ 7,200.00 |
| 26 | 12/30/14 | $ 7,440.00 |
| 27 | 01/15/15 | $ 7,200.00 |

| 28 | 01/15/15 | $ | 7,440.00 |
| 29 | 01/15/15 | $ | 7,440.00 |
| | **TOTAL:** | **$** | **297,800.00** |

(collectively, the "TYTY Four-Year Transfers").

135.    WHMC, Platschek, TYTY and/or Abramczyk caused the Debtor to make the TYTY Four-Year Transfers.

136.    The WHMC Four-Year Transfers were made to or for the benefit of TYTY and Abramczyk.

137.    The TYTY Four-Year Transfers were made with the actual intent to hinder, delay or defraud the Debtor's then existing and future creditors.

138.    The TYTY Four-Year Transfers constituted fraudulent transfers within the meaning of, and in violation of, the CUFTA, Conn. Gen. Stat. § 52-552e(a)(1).

139.    As a direct and proximate result of the TYTY Four-Year Transfers, the Debtor, its Estate and its creditors have been caused to suffer money damages.

140.    At all times relevant to the TYTY Four-Year Transfers, there have been creditors who have held and still hold matured or unmatured unsecured claims against the Debtor that were and are allowable under § 502 of the Bankruptcy Code or that were and are not allowable only under § 502(e).

141.    As a result of the foreoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the TYTY Four-Year Transfers; (b) direcing that the TYTY Four-Year Transfers be set aside; (c) recovering the TYTY Four-Year Transfers, or the value thereof, from TYTY and/or Abramczyk for the benefit of the Debtor's Estate, pursuant to 11 U.S.C. §§ 550 and 551 and Conn. Gen. Stat. § 52-552h(a); and (d) an injunction against TYTY and Abramczyk prohibiting them from further diposing of the transferred property or other property of the Estate.

**COUNT ELEVEN**
**CUFTA CONSTRUCTIVE FRAUDULENT TRANSFER**
**CONN. GEN. STAT. §§ 52-552e(a)(2) AND 52-552f(a)**
**(TYTY and ABRAMCZYK)**

142.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

143.     The TYTY Four-Year Transfers were made on or within four (4) years of the
Petition Date.

144.     The Debtor did not receive a reasonably equivalent value in exchange for the
TYTY Four-Year Transfers.

145.     At the time of the TYTY Four-Year Transfers, the Debtor was insolven, or
became insolvent, as a result thereof.

146.     At the time of the TYTY Four-Year Transfers, the Debtor was engaged, or was
about to engage, in a business or transaction for which any property remaining with the Debtor
was unreasonably small capital.

147.     At the time of the TYTY Four-Year Transfers, the Debtor intended to incur, or
believed or reasonably should have believed that it would incur, debts that would be beyond its
ability to pay as such debts mature.

148.     The TYTY Four-Year Transfers constitute fraudulent transfers within the
meaning of, and in violation of, CUFTA, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-552f(a).

149.     As a direct and proximate result of the TYTY Four-Year Transfers, the Debtor, its
Estate and its creditors have been caused to suffer money damages.

150.     As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and
preserving the TYTY Four-Year Transfers; (b) direcing that the TYTY Four-Year Transfers be
set aside; (c) recovering the TYTY Four-Year Transfers, or the value thereof, from TYTY and/or
Abramczyk for the benefit of the Debtor's Estate pursuant to 11 U.S.C. §§ 550 and 551 and state

law; and (d) an injunction against TYTY and Abramczyk prohibiting them from further

disposing of the transferred property or other property of the Estate.

**COUNT TWELVE**
**CUFTA INTENTIONAL FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b)(1), 550(a) and 551, and**
**CONN. GEN. STAT. §§ 52-552e(a)(1) AND 52-552h(a)**
**(PEARL STAFFING and ABRAMCZYK)**

151.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

152.    The Debtor made the following transfers to Pearl Staffing within four (4) years of

the Petition Date:

|  | Transfer Date | Amount of Transfer from Debtor |
|---|---|---|
| 1 | 05/22/13 | $ 105,000.00 |
| 2 | 05/30/13 | $ 105,000.00 |
| 3 | 06/05/13 | $ 85,000.00 |
| 4 | 06/11/13 | $ 23,000.00 |
| 5 | 06/13/13 | $ 125,000.00 |
| 6 | 06/20/13 | $ 100,000.00 |
| 7 | 06/20/13 | $ 120,000.00 |
| 8 | 06/27/13 | $ 126,307.93 |
| 9 | 07/03/13 | $ 80,000.00 |
| 10 | 07/11/13 | $ 148,408.17 |
| 11 | 07/19/13 | $ 100,000.00 |
| 12 | 07/25/13 | $ 100,000.00 |
| 13 | 08/01/13 | $ 110,000.00 |
| 14 | 08/07/13 | $ 100,000.00 |
| 15 | 08/13/13 | $ 500.00 |
| 16 | 08/13/13 | $ 500.00 |
| 17 | 08/15/13 | $ 113,978.06 |
| 18 | 08/22/13 | $ 35,000.00 |
| 19 | 08/27/13 | $ 10,000.00 |
| 20 | 08/27/13 | $ 10,000.00 |
| 21 | 08/27/13 | $ 10,000.00 |
| 22 | 08/28/13 | $ 5,000.00 |
| 23 | 09/03/13 | $ 100,000.00 |
| 24 | 09/06/13 | $ 75,000.00 |

| | | | |
|---|---|---|---|
| 25 | 09/09/13 | $ | 30,000.00 |
| 26 | 09/13/13 | $ | 135,000.00 |
| 27 | 09/17/13 | $ | 110,000.00 |
| 28 | 09/23/13 | $ | 80,000.00 |
| 29 | 10/02/13 | $ | 10,000.00 |
| 30 | 10/03/13 | $ | 80,000.00 |
| 31 | 10/07/13 | $ | 10,000.00 |
| 32 | 10/10/13 | $ | 100,000.00 |
| 33 | 10/11/13 | $ | 76,000.00 |
| 34 | 10/16/13 | $ | 65,000.00 |
| 35 | 10/21/13 | $ | 25,000.00 |
| 36 | 10/24/13 | $ | 120,000.00 |
| 37 | 10/30/13 | $ | 65,000.00 |
| 38 | 11/04/13 | $ | 45,000.00 |
| 39 | 11/07/13 | $ | 60,000.00 |
| 40 | 11/13/13 | $ | 10,000.00 |
| 41 | 11/14/13 | $ | 100,000.00 |
| 42 | 11/15/13 | $ | 75,000.00 |
| 43 | 11/20/13 | $ | 60,000.00 |
| 44 | 11/25/13 | $ | 20,000.00 |
| 45 | 11/27/13 | $ | 100,000.00 |
| 46 | 11/27/13 | $ | 10,000.00 |
| 47 | 12/04/13 | $ | 100,000.00 |
| 48 | 12/04/13 | $ | 10,000.00 |
| 49 | 12/12/13 | $ | 100,000.00 |
| 50 | 12/12/13 | $ | 40,000.00 |
| 51 | 12/18/13 | $ | 100,000.00 |
| 52 | 12/26/13 | $ | 40,000.00 |
| 53 | 12/27/13 | $ | 60,000.00 |
| 54 | 01/06/14 | $ | 40,000.00 |
| 55 | 01/08/14 | $ | 10,000.00 |
| 56 | 01/10/14 | $ | 10,000.00 |
| 57 | 01/13/14 | $ | 10,000.00 |
| 58 | 01/15/14 | $ | 20,000.00 |
| 59 | 01/16/14 | $ | 100,000.00 |
| 60 | 01/16/14 | $ | 50,000.00 |
| 61 | 01/17/14 | $ | 75,000.00 |
| 62 | 01/22/14 | $ | 50,000.00 |
| 63 | 01/30/14 | $ | 10,000.00 |

| | | | |
|---|---|---|---|
| 64 | 01/30/14 | $ | 40,000.00 |
| 65 | 01/31/14 | $ | 27,000.00 |
| 66 | 02/05/14 | $ | 15,000.00 |
| 67 | 02/06/14 | $ | 15,000.00 |
| 68 | 02/07/14 | $ | 50,000.00 |
| 69 | 02/07/14 | $ | 15,000.00 |
| 70 | 02/13/14 | $ | 50,000.00 |
| 71 | 02/13/14 | $ | 50,000.00 |
| 72 | 02/13/14 | $ | 100,000.00 |
| 73 | 02/18/14 | $ | 70,000.00 |
| 74 | 02/24/14 | $ | 15,000.00 |
| 75 | 02/27/14 | $ | 25,000.00 |
| 76 | 02/28/14 | $ | 10,000.00 |
| 77 | 03/03/14 | $ | 25,000.00 |
| 78 | 03/06/14 | $ | 40,000.00 |
| 79 | 03/07/14 | $ | 20,000.00 |
| 80 | 03/10/14 | $ | 4,000.00 |
| 81 | 03/12/14 | $ | 150,000.00 |
| 82 | 03/13/14 | $ | 70,000.00 |
| 83 | 03/17/14 | $ | 15,000.00 |
| 84 | 03/18/14 | $ | 10,000.00 |
| 85 | 03/25/14 | $ | 15,000.00 |
| 86 | 03/26/14 | $ | 20,000.00 |
| 87 | 04/04/14 | $ | 13,500.00 |
| 88 | 04/04/14 | $ | 50,000.00 |
| 89 | 04/10/14 | $ | 150,000.00 |
| 90 | 04/10/14 | $ | 120,000.00 |
| 91 | 04/14/14 | $ | 50,000.00 |
| 92 | 04/21/14 | $ | 15,000.00 |
| 93 | 04/23/14 | $ | 50,000.00 |
| 94 | 04/24/14 | $ | 35,000.00 |
| 95 | 04/29/14 | $ | 20,000.00 |
| 96 | 04/30/14 | $ | 23,000.00 |
| 97 | 05/05/14 | $ | 25,000.00 |
| 98 | 05/14/14 | $ | 100,000.00 |
| 99 | 05/14/14 | $ | 50,000.00 |
| 100 | 05/15/14 | $ | 80,000.00 |
| 101 | 05/20/14 | $ | 40,000.00 |
| 102 | 05/22/14 | $ | 50,000.00 |

| | | | |
|---|---|---|---|
| 103 | 05/27/14 | $ | 20,000.00 |
| 104 | 05/30/14 | $ | 35,000.00 |
| 105 | 06/06/14 | $ | 50,000.00 |
| 106 | 06/09/14 | $ | 10,000.00 |
| 107 | 06/11/14 | $ | 150,000.00 |
| 108 | 06/12/14 | $ | 50,000.00 |
| 109 | 06/16/14 | $ | 50,000.00 |
| 110 | 06/20/14 | $ | 30,000.00 |
| 111 | 06/26/14 | $ | 40,000.00 |
| 112 | 07/02/14 | $ | 20,000.00 |
| 113 | 07/03/14 | $ | 30,000.00 |
| 114 | 07/07/14 | $ | 15,000.00 |
| 115 | 07/08/14 | $ | 60,000.00 |
| 116 | 07/10/14 | $ | 50,000.00 |
| 117 | 07/17/14 | $ | 120,000.00 |
| 118 | 07/18/14 | $ | 50,000.00 |
| 119 | 07/22/14 | $ | 20,000.00 |
| 120 | 07/24/14 | $ | 80,000.00 |
| 121 | 07/30/14 | $ | 50,000.00 |
| 122 | 08/01/14 | $ | 60,000.00 |
| 123 | 08/05/14 | $ | 70,000.00 |
| 124 | 08/13/14 | $ | 150,000.00 |
| 125 | 08/15/14 | $ | 20,000.00 |
| 126 | 08/21/14 | $ | 70,000.00 |
| 127 | 08/25/14 | $ | 40,000.00 |
| 128 | 08/28/14 | $ | 35,000.00 |
| 129 | 09/02/14 | $ | 30,000.00 |
| 130 | 09/04/14 | $ | 50,000.00 |
| 131 | 09/11/14 | $ | 150,000.00 |
| 132 | 09/12/14 | $ | 30,000.00 |
| 133 | 09/16/14 | $ | 35,000.00 |
| 134 | 09/18/14 | $ | 20,000.00 |
| 135 | 09/19/14 | $ | 30,000.00 |
| 136 | 09/22/14 | $ | 10,000.00 |
| 137 | 09/24/14 | $ | 40,000.00 |
| 138 | 09/29/14 | $ | 40,000.00 |
| 139 | 10/03/14 | $ | 40,000.00 |
| 140 | 10/14/14 | $ | 10,000.00 |
| 141 | 10/20/14 | $ | 60,000.00 |

| 142 | 10/20/14 | $ | 60,000.00 |
| 143 | 10/20/14 | $ | 65,000.00 |
| 144 | 10/28/14 | $ | 15,000.00 |
| 145 | 10/28/14 | $ | 7,000.00 |
| 146 | 11/06/14 | $ | 6,000.00 |
| 147 | 11/13/14 | $ | 150,000.00 |
| 148 | 11/14/14 | $ | 30,000.00 |
| 149 | 11/17/14 | $ | 20,000.00 |
| 150 | 11/18/14 | $ | 68,000.00 |
| 151 | 11/19/14 | $ | 20,000.00 |
| 152 | 11/25/14 | $ | 50,000.00 |
| 153 | 11/25/14 | $ | 10,000.00 |
| 154 | 11/26/14 | $ | 5,500.00 |
| 155 | 11/26/14 | $ | 55,000.00 |
| 156 | 12/03/14 | $ | 40,000.00 |
| 157 | 12/05/14 | $ | 13,000.00 |
| 158 | 12/09/14 | $ | 50,000.00 |
| 159 | 12/10/14 | $ | 150,000.00 |
| 160 | 12/11/14 | $ | 60,000.00 |
| 161 | 12/11/14 | $ | 50,000.00 |
| 162 | 12/16/14 | $ | 35,000.00 |
| 163 | 12/24/14 | $ | 35,000.00 |
| 164 | 12/26/14 | $ | 35,000.00 |
| 165 | 12/30/14 | $ | 30,000.00 |
| | **TOTAL:** | **$** | **8,700,694.00** |

(collectively, the "Pearl Staffing Four-Year Transfers").

153.    WHMC, Platschek, TYTY and/or Abramczyk caused the Debtor to make the Pearl Staffing Four-Year Transfers.

154.    The Pearl Staffing Four-Year Transfers were made to or for the benefit of Pearl Staffing and Abramczyk.

155.    The Pearl Staffing Four-Year Transfers were made with the actual intent to hinder, delay or defraud the Debtor's then exising and future creditors.

156.    The Pearl Staffing Four-Year Transfers constituted fraudulent transfers within the meaning of, and in violation of, CUFTA, Conn. Gen. Stat. § 52-552e(a)(1).

157.    As a direct and proximate result of the Pearl Staffing Four-Year Transfers, the Debtor, its Estate and its creditors have been caused to suffer money damages.

158.    At all times relevant to the Pearl Staffing Four-Year Transfers, there have been creditors who have held and still hold matured or unmatured unsecured claims against the Debtor that were and are allowable under § 502 of the Bankruptcy Code or that were and are not allowable only under § 502(e).

159.    As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Pearl Staffing Four-Year Transfers; (b) directing that the Pearl Staffing Four-Year Transfers be set aside; (c) recovering the Pearl Staffing Four-Year Transfers, or the value thereof, from Pearl Staffing and/or Abramczyk for the benefit of the Debtor's Estate, pursuant to 11 U.S.C. §§ 550 and 551 and Conn. Gen. Stat. § 52-552h(a); and (d) an injunction against Pearl Staffing and Abramczyk, prohibiting them from further disposing of the transferred property or other property of the Estate.

## COUNT THIRTEEN
## CUFTA CONSTRUCTIVE FRAUDULENT TRANSFER
## CONN. GEN. STAT. §§ 52-552e(a)(2) AND 52-552f(a)
### (PEARL STAFFING and ABRAMCZYK)

160.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

161.    The Pearl Staffing Four-Year Transfers were made on or within four (4) years of the Petition Date.

162.    The Debtor did not receive a reasonably equivalent value in exchange for the Pearl Staffing Four-Year Transfers.

163.    At the time of the the Pearl Staffing Four-Year Transfers, the Debtor was insolvent, or became insolve, as a result thereof.

164.    At the time of the the Pearl Staffing Four-Year Transfers, the Debtor was engaged, or was about to engage, in a business or transaction for which any property remaining with the Debtor was unreasonably small capital.

165.    At the time of the the Pearl Staffing Four-Year Transfers, the intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

166.    The Pearl Staffing Four-Year Transfers constitute fraudulent transfers within the meaning of, and in violation of, the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-552f(a).

167.    As a direct and proximate result of the Pearl Staffing Four-Year Transfers, the Debtor, its Estate and its creditors have been caused to suffer money damages.

168.    As a result of the foreoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Pearl Staffing Four-Year Transfers; (b) direcing that the Pearl Staffing Four-Year Transfers be set aside; (c) recovering the Pearl Staffing Four-Year Transfers, or the value thereof, from Pearl Staffing and/or Abramczyk for the benefit of the Debtor's Estate, pursuant to 11 U.S.C. §§ 550 and state law; and (d) an injunction against Pearl Staffing and Abramczyk prohibiting them from further disposing of the transferred property or other property of the Estate.

## COUNT FOURTEEN
### CUFTA INTENTIONAL FRAUDULENT TRANSFER 11 U.S.C. §§ 544(b)(1), 550(a) AND 551 AND CONN. GEN. STAT. §§ 52-552e(a)(1) AND 52-552h(a)
### (LANDA)

169.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

170.     Landa and his wife, Judy Landa, are business associates of Platschek and are equityholders, along with Platschek, in various skilled nursing facilities.

171.     Upon information and belief, Landa never was a member of WHMC and never rendered services to, or for the benefit of, the Debtor.

172.     The Debtor made the following transfer to Landa within four (4) years of the Petition Date:

|   | Transfer Date | Amount of Transfer from Debtor |
|---|---|---|
| 1 | 11/15/13 | $         40,000.00 |
| | **TOTAL:** | **$         40,000.00** |

(collectively, the "Landa Transfer").

173.     WHMC, Platschek, TYTY and/or Abramczyk caused the Debtor to make the Landa Transfer.

174.     The Landa Transfer was made to or for the benefit of Landa.

175.     The Landa Transfer was made with the actual intent to hinder, delay or defraud the Debtor's then existing and future creditors.

176.     The Landa Transfer constituted a fraudulent transfer within the meaning of, and in violation of, CUFTA, Conn. Gen. Stat. § 52-552e(a)(1).

177.     As a direct and proximate result of the Landa Transfer, the Debtor, its Estate and its creditors have been caused to suffer money damages.

178.    At all times relevant to the Landa Transfer, there have been creditors who have

held and still hold matured or unmatured unsecured claims against the Debtor that were and are

allowable under § 502 of the Bankruptcy Code or that were and are not allowable only under §

502(e).

179.    As a result of the foreoing, the Trustee is entitled to a judgment: (a) avoiding and

preserving the Landa Transfer; direcing that the Landa Transfer be set aside; (c) recovering the

Landa Transfer, or the value thereof, from Landa for the benefit of the Debtor's Estate, pursuant

to 11 U.S.C. §§ 550 and 551 and Conn. Gen. Stat. § 52-552h(a); and (d) an injunction against

Landa prohibiting him from further diposing of the transferred property or other property of the

Estate.

## COUNT FIFTEEN
## CUFTA CONSTRUCTIVE FRAUDULENT TRANSFER
## CONN. GEN. STAT. §§ 52-552e(a)(2) AND 52-552f(a)
## (LANDA)

180.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

181.    The Landa Transfer was made on or within four (4) years of the Petition Date.

182.    The Debtor did not receive a reasonably equivalent value in exchange for the

Landa Transfer.

183.    At the time of the Landa Transfer, the Debtor was insolvent, or became insolvent,

as a result thereof.

184.    At the time of the Landa Transfer, the the Debtor was engaged, or was about to

engage, in a business or transaction for which any property remaining with the Debtor was

unreasonably small capital.

185.    At the time of the Landa Transfer, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debtrs matured.

186.    The Landa Transfer constitutes a fraudulent transfer within the meaning of, and in violation of, CUFTA, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-552f(a).

187.    As a direct and proximate result of the Landa Transfer, the Debtor, its Estate and its creditors have been caused to suffer money damages.

188.    As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Landa Transfer; (b) directing that the Land Transfer be set aside; (c) recovering the Landa Transfer, or the value thereof, from Landa for the benefit of the Debtor's Estate, pursuant to 11 U.S.C. §§ 550 and 551 and state law; and (d) an injunction against Landa prohibiting him from further disposing of the transferred property or other property of the Estate.

## COUNT SIXTEEN
## BREACH OF FIDUCIARY DUTY
### (WHMC, PLATSCHEK, TYTY, PEARL STAFFING and ABRAMCZYK)

189.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

190.    The Debtor relied upon WHMC, acting by and through Platschek, to properly perform all billing, collection and financial management activities concerning the Debtor, including processing and paying all accounts payable, paying all rents, insurance, applicable taxes, operating costs as required by any lease entered into by the Debtor, establishing and maintaining bank accounts on behalf of the Debtor, representing the Debtor in all legal, regulatory and personnel matters, and providing all necessary bookkeeping and accounting for the Debtor's operations.

191.    In light of the foregoing, WHMC and Platschek owed a fiduciary duty to the Debtor to act in the best interests of the Debtor.

192.    TYTY owed the Debtor a fiduciary duty to act in its best interests, by virtue of the

fact that WHMC provided TYTY with a signature stamp bearing the name "Donald Griggs" and

authorized TYTY to issue checks from the Debtor's bank account(s) and authorized TYTY to

initiate ACH and wire transfers from the Debtor's bank account(s), including transfers to

WHMC, Platschek, Pearl Staffing and to TYTY, itself.

193.    While TYTY was issuing checks and otherwise transferring funds from the

Debtor's bank accounts, (and while TYTY was receiving the aforementioned transfers from the

Debtor), TYTY transferred the Debtor's funds to pay debts that the Debtor did not owe.

194.    Pearl Staffing, acting by and through Abramczyk, either hired the Debtor's

employees or subcontracted with WHMC for the preparation and processing of Debtor's payroll

and records regarding taxes related thereto, and owed the Debtor a fiduciary duty to ensure that

all proper payroll expenses, including applicable taxes were paid, and paid timely.

195.    Upon information and belief, while Pearl Staffing and Abramczyk were involved

in the preparation and processing of the Debtor's payroll and taxes related thereto, (and receiving

the aforementioned transfers from the Debtor), Pearl Staffing and Abramczyk failed to ensure

that the Debtor paid all applicable taxes and all monies owed to people who rendered services to

or behalf of the Debtor.

196.    Pearl Staffing's failure to ensure that all of the Debtor's payroll and taxes related

thereto were timely paid, resulted in the imposition of interest and penalties on taxes owed by the

Debtor.

197.    By virtue of the foregoing, WHMC and Platschek, breached their fiduciary duties

to the Debtor.

198.    By virtue of the foregoing, TYTY, Pearl Staffing and Abramczyk, breached their fiduciary duties to the Debtor.

199.    As a result of the aforementioned breaches of fiduciary duty owed to the Debtor by WHMC, Platschek, TYTY, Pearl Staffing and Abramczyk, the Debtor has incurred damages in an amount to be proven at trial.

**COUNT SEVENTEEN**
**CONVERSION**
**(WHMC, PLATSCHEK, TYTY, PEARL STAFFING, ABRAMCZYK and LANDA)**

200.    The WHMC Four-Year Transfers constitute the unauthorized assumption and intentional exercise of the right of ownership over the Debtor's funds by WHMC and Platschek, to the exclusion of the Debtor's rights.

201.    The TYTY Four-Year Transfers constitute the unauthorized assumption and intentional exercise of the right of ownership over the Debtor's funds by TYTY and Abramczyk, to the exclusion of the Debtor's rights.

202.    The Pearl Staffing Four-Year Transfers constitute the unauthorized assumption and intentional exercise of the right of ownership over the Debtor's funds by Pearl Staffing and Abramczyk, to the exclusion of the Debtor's rights.

203.    The Landa Transfer constitutes an unauthorized assumption and intentional exercise of the right of ownership over the Debtor's funds by Landa, to the exclusion of the Debtor's rights.

204.    As a result of conversion of its property by WHMC, Platschek, TYTY, Pearl Staffing, Abramczyk and Landa, the Debtor has incurred damages in an amount to be proven at trial.

**COUNT EIGHTEEN**
**CIVIL THEFT**
**CONN. GEN. STAT. §§ 52-564, 53a-119**
**(WHMC, PLATSCHEK, TYTY, PEARL STAFFING,**
**ABRAMCZYK and LANDA)**

205.    WHMC and Platschek took the WHMC Four-Year Transfers with the intent to

deprive the Debtor of its property or to appropriate the Debtor's property for themselves or a

third party.

206.    In so doing, WHMC and Platschek wrongfully took, obtained or withheld the

Debtor's funds.

207.    WHMC and Platschek wrongfully allowed, and TYTY and Abramczyk

wrongfully took, the TYTY Four-Year Transfers with the intent to deprive the Debtor of its

property or to appropriate the Debtor's property to themselves or a third party.

208.    In so doing, TYTY and Abramczyk wrongfully took, obtained or withheld the

Debtor's funds.

209.    WHMC and Platschek wrongfully allowed, and Pearl Staffing and Abramczyk

wrongfully took, the Pearl Staffing Four-Year Transfers with the intent to deprive the Debtor of

its property or to appropriate the Debtor's property to themselves or a third party.

210.    In so doing, Pearl Staffing and Abramczyk wrongfully took, obtained or withheld

the Debtor's funds.

211.    WHMC and Platschek wrongfully allowed or caused, and Landa  wrongfully

took, the Landa Transfer with the intent to deprive the Debtor of its property or to appropriate the

Debtor's property to Landa.

212.    In so doing, Landa, WHMC, and/or Platschek wrongfully took, obtained or

withheld the Debtor's funds.

42

213.    As a result of the theft of its property by WHMC, Platschek, TYTY, Pearl Staffing, Abramczyk and/or Landa, the Debtor has incurred damages in an amount to be proven at trial.

### COUNT NINETEEN
### CIVIL CONSPIRACY
### (WHMC, PLATSCHEK, TYTY, PEARL STAFFING and ABRAMCZYK)

214.    WHMC, Platschek, TYTY, Pearl Staffing and Abramczyk conspired and agreed to work together to systematically siphon the Debtor's property by way of a series of unlawful acts and/or lawful acts undertaken by unlawful means.

215.    By failing to keep or maintain records concerning their financial dealings with the Debtor, by virtue of causing or allowing the Debtor to pay the debts of others, and by virtue of causing and/or accepting the WHMC Four-Year Transfers, the TYTY Four-Year Transfers, the Pearl Staffing Four-Year Transfers and the Landa Transfer, each of the aforementioned conspirators committed at least one act in furtherance of their conspiracy to systematically siphon the Debtor's property for the benefit of themselves or a third party.

216.    The Debtor has incurred damages as a result of the civil conspiracy between and among WHMC, Platschek, TYTY, Pearl Staffing and Abramczyk in an amount to be proven at trial.

### COUNT TWENTY
### CUTPA VIOLATION OF CONN. GEN. STAT. § 42-110b(a)
### (WHMC, PLATSCHEK, TYTY, PEARL STAFFING and ABRAMCZYK)

217.    WHMC, Platschek, TYTY, Pearl Staffing and Abramczyk have engaged in a pattern of unfair and deceptive practices calculated to siphon the Debtor's assets for their benefit, and for the benefit of their family, friends and business associates.

218.    The acts and practices alleged in this count constituted unfair and deceptive acts and practices in violation of Conn. Gen. Stat. § 42-110b(a) of the Connecticut Unfair Trade Practices Act. ("CUTPA").

219.    The acts and practices alleged herein were unfair in that (a) they offended public policy as it has been established by the common law or otherwise or were within at least the penumbra of some common law or established concept of unfairness, (b) were immoral, unethical, oppressive or unscrupulous, or (c) caused substantial injury to the Debtor in that the injuries that they caused was substantial, was not outweighed by any countervailing benefits to consumers or competition that they produced and caused an injury that the Debtor, itself, could not reasonably have avoided.

220.    The acts and practices alleged in this Count were done in the conduct of the primary trade or business of WHMC, Platschek, TYTY, Pearl Staffing and Abramczyk.

221.    The unfair and deceptive acts and practices of WHMC, Platschek, TYTY, Pearl Staffing and Abramczyk have caused the Debtor to suffer an ascertainable loss of money or property and actual damages and have forced the Debtor and its Estate to expend significant time, legal fees, and other resources.

222.    The acts and practices of WHMC, Platschek, TYTY, Pearl Staffing and Abramczyk alleged in this Count were done with a reckless indifference to the Debtor's rights or were intentional and wanton violations of those rights.

### COUNT TWENTY-ONE
### UNJUST ENRICHMENT
### (WHMC and PLATSCHEK)

223.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

224.    WHMC and Platschek received a substantial financial benefit from the WHMC

Four-Year Transfers for which they unjustly did not pay or render services or otherwise provide

consideration to the Debtor to justify such transfers.

225.    WHMC and Platschek did not pay or otherwise provide consideration to the

Debtor for the benefit conferred upon them by some or all of the WHMC Four-Year Transfers.

226.    The failure of WHMC and Platschek to pay or otherwise provide consideration to

the Debtor for the benefits conferred upon them was to the detriment of the Debtor, its Estate,

and its creditors.

227.    It is contrary to equity and good conscience for WHMC and Platschek to retain

such benefits.

228.    As a result of the foregoing, the Debtor, its estate, and its creditors have been

injured.

### COUNT TWENTY-TWO
### UNJUST ENRICHMENT
### (TYTY and ABRAMCZYK)

229.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

230.    TYTY and Abramczyk received a substantial financial benefit from the TYTY

Four-Year Transfers for which they unjustly did not pay or render services or otherwise provide

consideration to the Debtor to justify such transfers.

231.    TYTY and Abramczyk did not pay or otherwise provide consideration to the

Debtor for the benefit conferred upon them by the TYTY Four-Year Transfers.

232.   The failure of TYTY and Abramczyk to pay or otherwise provide consideration to the Debtor for the benefits conferred upon them was to the detriment of the Debtor, its Estate, and its creditors.

233.   It is contrary to equity and good conscience for TYTY and Abramczyk to retain such benefits.

234.   As a result of the foregoing, the Debtor, its estate, and its creditors have been injured.

**COUNT TWENTY-THREE**
**UNJUST ENRICHMENT**
**(PEARL STAFFING and ABRAMCZYK)**

235.   The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

236.   Pearl Staffing and Abramczyk received a substantial financial benefit from the Pearl Staffing Four-Year Transfers for which they unjustly did not pay or render services or otherwise provide consideration to the Debtor to justify such transfers.

237.   Pearl Staffing and Abramczyk did not pay or otherwise provide consideration to the Debtor for all of the benefit conferred upon them by the Pearl Staffing Four-Year Transfers.

238.   The failure of Pearl Staffing and Abramczyk to pay or otherwise provide consideration to the Debtor for the benefits conferred upon them was to the detriment of the Debtor, its Estate, and its creditors.

239.   It is contrary to equity and good conscience for Pearl Staffing and Abramczyk to retain such benefits.

240.   As a result of the foregoing, the Debtor, its estate, and its creditors have been injured.

## STATEMENT CONCERNING ENTRY OF FINAL ORDERS OR JUDGMENT

Pursuant to Fed. R. Bankr. P. 7008, Bonnie Mangan, Chapter 7 Trustee of Walnut Hill, Inc. hereby consents to entry of final orders or judgment by the Bankruptcy Court.

**WHEREFORE**, the Trustee, Bonnie C. Mangan, respectfully requests that the Court enter judgment in favor of the Trustee and against the defendants as follows:

1.    Actual and compensatory damages.

2.    Pursuant to 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 550(a), 551 and the CUFTA: (a) avoidance of all transfers set forth above; (b) an order directing that the transfers set forth above be set aside; and (c) recovery of the transfers set forth above, or the value thereof, from each of the defendants named in each count for the benefit of the Estate of the Debtor;

3.    As to Count EIGHTEEN, only: Treble damages, pursuant to Conn. Gen. Stat. §52-564.

4.    As to Count TWENTY, only:

    a.    a judgment against each defendant pursuant to Conn. Gen. Stat. § 42-110g(a) for the actual damages suffered by the Debtor;

    b.    punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a); and

    c.    the costs of this suit, including reasonable attorneys' fees, expenses and interest pursuant to Conn. Gen. Stat. § 42-110g(a).

4.    A permanent injunction precluding the Defendants from transferring or disposing of any assets during the pendency of this bankruptcy case;

5.      Disallowance of any claims held by the Defendants and/or their assignees against

the Debtor and/or the Estate until the Defendants and/or their assignees satisfy the

judgment;

6.      Attorneys' fees;

7.      Interest, pursuant to Conn. Gen. Stat. §37-3a;

8.      Pre-judgment interest and costs; and

9.      Such other and further relief as this Court deems just and equitable.

Dated at Milford, Connecticut on this 13th day of June, 2018.

BONNIE C. MANGAN,
CHAPTER 7 TRUSTEE OF
WALNUT HILL, INC.


By: */s/ Lawrence S. Grossman*
Lawrence S. Grossman, Esq. [ct15790]
David C. Shufrin, Esq. [ct29230]
Joanna M. Kornafel, Esq. [ct29199]
HURWITZ, SAGARIN, SLOSSBERG
 & KNUFF, LLC
147 North Broad Street
Milford, CT 06460
Tel: 203-877-8000/Fax: 203-878-9800
LGrossman@hssklaw.com
DShufrin@hssklaw.com
JKornafel@hssklaw.com